1

```
                    UNITED STATES DISTRICT COURT

                    WESTERN DISTRICT OF NEW YORK


- - - - - - - - - - - - - X       24-MJ-1204
UNITED STATES OF AMERICA,
              Plaintiff

         Vs.                      Buffalo, New York
PETER CELENTANO,                  October 18, 2024
              Defendant
- - - - - - - - - - - - - X


                TRANSCRIPT OF INITIAL APPEARANCE
        BEFORE THE HONORABLE JEREMIAH J. MCCARTHY
                UNITED STATES MAGISTRATE JUDGE


                U.S. ATTORNEY'S OFFICE
                BY: JEFFREY INTRAVATOLA, ESQ.
                138 Delaware Avenue
                Buffalo, New York 14202
                Appearing on behalf of the Plaintiff

                GALLO & IACOVANGELO LLP
                BY: JAMES SCOTT WOLFORD, ESQ.
                180 Canal View Boulevard
                Suite 100
                Rochester, New York 14623
                Appearing on behalf of the Defendant




            COURT REPORTER:Brandi A. Wilkins
                 scalisba@gmail.com
                 Kenneth B. Keating Federal Building
                 100 State Street, Room 1250A
                 Rochester, New York 14614
```

2

1      THE CLERK:  All rise.
2      THE COURT:  Good afternoon.  Please be
3  seated.
4      THE CLERK:  On the record in criminal
5  proceeding 24-MJ-1204, United States of America vs.
6  Peter Celentano for an initial appearance on criminal
7  complaint.  Present in the courtroom are Assistant
8  U.S. Attorney Jeffrey Intravatola.  Defendant with
9  attorney James Wolford.  United States Probation
10 Officer Andre McCrae.  The Honorable Jeremiah J.
11 McCarthy presiding.
12     THE COURT:  Good afternoon again.
13     MR. INTRAVATOLA:  Good afternoon, Your
14 Honor.
15     MR. WOLFORD:  Good afternoon, Your Honor.
16     THE COURT:  Mr. Celentano, you are named in
17 a criminal complaint dated October 17, 2024.  Have you
18 received a copy of the complaint and the supporting
19 affidavit?
20     THE DEFENDANT:  Yes.  I'm reading it now.
21     THE COURT:  Okay.  Would you briefly
22 summarize the charges and the potential penalties, Mr.
23 Intravatola.
24     MR. INTRAVATOLA:  Yes, Your Honor.  There's
25 a single count in the complaint which is for illegal

1    possession of machine guns.  It states that on or
2    about September 29 of 2024 in the Western District of
3    New York the defendant Peter Celentano did knowingly
4    possess machine guns to wit two machine gun conversion
5    devices used to modify semi automatic firearms to fire
6    as fully automatic weapons enabling said firearms to
7    automatically shoot more than one shot without manual
8    reloading by a single function of the trigger and 59
9    AR style lower receivers containing automatic seer
10   pinholes all in violation of Title 18 United States
11   Code Sections 922(o) and 924(a)(2), and for this
12   charge, Your Honor, the maximum penalty is a term of
13   imprisonment of 10 years, a maximum fine of $250,000,
14   a maximum term of supervised release of three years
15   and there's no mandatory minimum.
16              THE COURT:  Thank you.  Sir, you have the
17   right to remain silent.  You cannot be compelled to
18   testify against yourself.  You have the right to be
19   represented by an attorney, and if you cannot afford
20   an attorney, one will be appointed for you.  Mr.
21   Wolford, are you fully retained?
22              MR. WOLFORD:  I am, Your Honor.
23              THE COURT:  All right.  Thank you.
24   Defendant is also entitled to a preliminary hearing to
25   determine whether the charges of the complaint are

4

1    supported by probable cause.  Do you wish to have a
2    hearing?
3            MR. WOLFORD:  Not at this time, Your Honor.
4            THE COURT:  Okay.
5            MR. WOLFORD:  But would reserve my right to
6    ask for said hearing.
7            THE COURT:  Okay.
8            MR. WOLFORD:  But I'm not asking for one at
9    this time.
10           THE COURT:  All right, thank you.  You will
11   reserve that right.
12           MR. WOLFORD:  Thank you.
13           THE COURT:  Is the Government seeking
14   detention?
15           MR. INTRAVATOLA:  Yes, Your Honor.  The
16   Government would be moving for detention under 18
17   United States Code Section 3142(f)(1)(e).  I'm happy
18   to be heard on that right now, Judge, or continue the
19   detention hearing to a later date if the Court would
20   prefer.  I would note that we are not yet in
21   possession of the final bail report, so I leave that
22   to the Court whether we'd like to conduct that today
23   or perhaps early next week.
24           THE COURT:  Is this a presumption case?
25           MR. INTRAVATOLA:  It's not a presumption

1    case, Your Honor.  However, I would note that under
2    the statute, defendant buys to be detained pending
3    that detention hearing.
4             THE COURT:  Right.  Mr. Wolford, what's your
5    preference as to a detention hearing?
6             MR. WOLFORD:  Well, obviously, Your Honor, I
7    would object to my client being detained until the
8    detention hearing.  If we're in fact going to have a
9    motion for detainment, we're ready to proceed with
10   that right now.  If the Court is willing to or is
11   going to adjourn it or schedule it for next week, we'd
12   ask that my client stay out of custody.
13            I would like to point out for the Court that
14   my client self surrendered after being notified by me
15   last night that there was a criminal complaint for
16   him, and he obviously was here and we were in constant
17   contact.  So my request would be that if we are going
18   to have that hearing we would do it but my client
19   would remain out of custody until said time.
20            THE COURT:  Okay.  Has he been interviewed?
21            OFFICER MCCRAE:  Yes, Judge.  He has been
22   interviewed.
23            THE COURT:  Okay.  Can you give me an oral
24   report?
25            OFFICER MCCRAE:  Yes.  So the defendant

1  reported that he was born in Lipskin, New York.  He
2  denied possessing any passport or international travel
3  documents.  He is a U.S. citizen.  He reported
4  residing at 23 Rochester Street in Bergen, New York,
5  with his wife and five-year-old son.  The defendant
6  did report possessing five to ten long guns which
7  are -- were located inside of his residence.
8           He advised that he has a pistol permit but
9  it's temporarily been taken by authorities.  The
10 defendant stated that his mother and three siblings
11 all reside in the Long Island, New York area.  He
12 denied any history of domestic violence.  He reported
13 that he has a doctorate degree in music from Stony
14 Brook University.  He denied any military history.
15          The defendant described his physical health
16 as fair and advised that he is prescribed six to seven
17 medications for various allergies, acid reflux and
18 asthma.  He denied any mental health treatment or
19 diagnosis and the same for substance abuse.  No
20 substance abuse issues or prior treatment.  The
21 defendant is employed with Amazon and has been for the
22 past seven years as a specialist solution architect,
23 and he makes approximately $190,000 a year.  Prior to
24 that he was employed with a consulting firm for two
25 and a half years.

1      He owns his residence.  Very limited
2   liabilities.  Has about $10,000 in a joint checking
3   account.  And no prior criminal history.  Our only
4   concern honestly is the firearms located inside of the
5   residence at this time and the nature of the charges.
6      THE COURT:  Okay.  Do you have a
7   recommendation?
8      OFFICER MCCRAE:  We would like to verify
9   this information prior to putting a recommendation on
10  the record.
11     THE COURT:  Okay.  And do you want a
12  proffer?  Go ahead.
13     MR. INTRAVATOLA:  Yes, Judge.  So our
14  detention recommendation here is kind of two prompt.
15  First, we have the nature of this case, and then we
16  have what the investigation has kind of uncovered
17  about the defendant over the past few days.
18     So the nature of this case is fairly self
19  explanatory.  We have a significant volume of machine
20  guns that were recovered from defendant, but more so
21  we have defendant's conduct after that initial search
22  warrant was executed at his house.  He had additional
23  firearms as outlined in the affidavit, and he went to
24  various places to secret them away.
25     So in this case, we have of course an

1  instance where probation will need to do a home
2  inspection.  They'll need to do various check ups on
3  defendant as they do, and we don't know necessarily
4  that we have every single firearm that's been
5  recovered in this case, Judge.  Now, that's especially
6  a concern because of the second prong of why we are
7  seeking detention here.
8         The investigation has uncovered -- and this
9  is part of why I thought maybe next week would be
10 better because I haven't had a chance to of course
11 provide anything to defendant or the Court yet, but
12 law enforcement has reviewed defendant's social media
13 accounts and to put it mildly, they are troubling.  I
14 have some excerpts from the social media accounts.  As
15 I noted I haven't had a chance to provide them to the
16 Court or defendant yet, but if I could read some
17 excerpts from them, I'd like to do so.
18         THE COURT:  Sure.
19         MR. INTRAVATOLA:  So these were from Twitter
20 or X, posts on Twitter or X.  We have an instance
21 where defendant posted an individual holding a sign
22 that says fuck cops.  We have -- and I'm just reading
23 a selection of these, Judge.  I don't want to take the
24 Court's time, but there are numerous posts.
25         We have an instance where defendant posted

1   an individual holding what looks to be an automatic
2   rifle saying that your rights are being stripped away
3   by people with names and addresses.  Of course the
4   implication being there that individuals like myself
5   or others in law enforcement have names and addresses.
6   Particularly troubling.
7           THE COURT:  Does that indicate names and
8   addresses or no?
9           MR. INTRAVATOLA:  No, Judge.  It's more the
10  implication that --
11          THE COURT:  Okay.
12          MR. INTRAVATOLA:  -- we're people with names
13  and addresses and it begs the question why.
14          THE COURT:  Right.
15          MR. INTRAVATOLA:  Why would someone be
16  mentioning that?  And I'm also happy to provide this
17  up to the Court, Judge.  I have several copies if you
18  are interested, Your Honor.
19          THE COURT:  No.  Just you can continue your
20  comments.
21          MR. INTRAVATOLA:  Okay.  We have a meme
22  that's the Simpsons.  This one probably makes more
23  sense to view, but there's an image of Homer Simpson
24  in a bathtub with the caption American gun owners with
25  Bart Simpson standing behind him holding a chair

10

1    implying that he would hit him with the chair saying
2    infringements for protection followed by an image of
3    Homer Simpson holding a chair behind Bart Simpson with
4    the caption over the chair being 3D printers, Homer
5    Simpson being captioned with reasonable people pushed
6    to be unreasonable and Bart Simpson being captioned
7    with big Government thinking they did something.
8              This post is seemingly a brief post of
9    another individual's comments on Twitter saying LOL
10   fuck the AFT, which I can describe in a second, and
11   their warnings.  I'm here to arm the masses.  The
12   background behind that, Judge, is as I understand it
13   President Biden mistakenly referred to the ATF as AFT
14   at one point.  So there are some internet memes going
15   around joking that the ATF is the AFT.
16             Additionally, there was an image of I
17   believe this is Mr. Rogers from the popular children's
18   show back in the day and it's captioned if they send
19   one of yours to the hospital send six of theirs to the
20   morgue.  Additionally, there was a post that's
21   captioned and basically there's a monster behind what
22   appears to be a federal agent and it says when the
23   Feds track you down to your Appalachian cave home but
24   you've been training in actual fucking wendingo which
25   I believe is the monster in guerilla warfare after

1   feeding him chicken tenders and Bang energy which is
2   an energy drink for the past six months, and then
3   again, there's a creature post threateningly behind
4   the individual who appears to be a federal agent.
5           And then lastly, Judge, and I won't go
6   through all of these but there was an inquiry on a
7   Reddit post, Reddit being another social media
8   network, and the -- that forum on Reddit is captioned
9   Reddit legal advice off topic where people go to seek
10  legal advice sometimes anonymously under their screen
11  names.  And the question there was is it illegal to
12  tell a cop to kill themselves, just wondering.
13          And so again, that was just a sampling,
14  Judge, but posts of this nature naturally raise a red
15  flag for us.  We have an individual who has already
16  demonstrated that when confronted with law enforcement
17  and the search warrant at his home he did not turn
18  over additional firearms.  He went and hid them
19  places, and now we have someone whose online persona
20  espouses these anti Government sort of fringe violent
21  views against federal agents, and so in my view,
22  Judge, these nature and circumstances of this case in
23  addition to the background of defendant that he's
24  demonstrated through these posts and through his
25  conduct in this case, detention seems clear cut here,

1    Judge, because there are dangerous posts there, and we
2    see in the news all the time individuals who make
3    similar posts like this and what they go on to do, and
4    in my view, Judge, it's -- it's too dangerous to let
5    an individual like this back out into society
6    particularly when we have probation agents or
7    probation officers who in effect are Feds going to
8    monitor a defendant.
9              They're going to have to come into contact
10   with the defendant every single time they need to do
11   an update.  And we certainly can't take the risk that
12   Court staff will be put in dangerous situations given
13   the firearms in this case and given defendant's views.
14             THE COURT:  All right.  Thank you.  Mr.
15   Wolford?
16             MR. WOLFORD:  Yes.  Thank you, Your Honor.
17   Appreciate that.  Well, I guess I'll address who my
18   client is first as far as obviously pre-trial
19   indicated he has no prior criminal history.  He's been
20   a lifelong resident of New York.  He married his wife
21   who is from this area or actually Batavia and moved
22   back up here in 2015, bought his home with his wife in
23   2018.
24             As indicated by pre-trial, he does have a
25   master in music.  He did attend Potsdam to receive his

```
 1    under graduate degree and graduated high school at
 2    Bellport and is a self taught IT consultant, engineer
 3    and was working for a company called Open Source
 4    Consulting Group which was ultimately acquired by
 5    Amazon, and since holding his position at Amazon for
 6    the past I believe eight years, he's received a number
 7    of promotions.  He's now working on principal level
 8    positions dealing with executives and what have you.
 9            His wife who I don't know if was able to
10    confirm some of the information provided to pre-trial
11    is at church.  They're both very involved in the
12    church.  He sings in the choir, attends men's group
13    and has a son with his wife.  I reviewed the affidavit
14    a couple of times, reviewed the complaint, and as far
15    as what I can glean here, my client what was
16    discovered at his house were two machine gun
17    conversion devices.  From what's detailed in the
18    affidavit here, and I believe it was prior to the
19    search warrant being executed because it says here at
20    paragraph 10, prior to the execution of the search
21    warrant at 23 Rochester Street, and that's my client's
22    address, they obtained a search warrant, GPS monitor
23    and that's where they followed him to Lakeshore Road.
24    I didn't read any allegation of after the execution of
25    the search warrant that my client then went and was
```

1    disseminating property throughout the area or what
2    have you.  So that was news to me from hearing that
3    from the Government from the proffer.
4           What we have here obviously in the affidavit
5    are two separate homeowners who had property at their
6    house that the Government believes was illegal and are
7    saying that it's my client's.  So I would point that
8    out for the Court that we have just two of the items
9    identified in the complaint, these two machine gun
10   conversion devices and have two individuals instead of
11   saying that's my gun or my equipment they're pointing
12   the finger at my client.
13          Now, we don't have as typical as the Court
14   would receive for confidential informants.  We've used
15   them in the past.  They're reliable in the past.  We
16   have no credibility determinations made here in the
17   affidavit as far as supporting the land owner's
18   version of events.  Now we have social media accounts.
19   And I would like to add that there's no accusations
20   that my client took any of these items that were
21   discovered and was disseminating them, selling them,
22   using them in any type of fashion whatsoever.
23          So all we have is essentially from the
24   affidavit is that my client is being accused of having
25   possession and control over these items that were not

1    found at his residence.  Now my client's being made
2    out to be that we can't even have a probation officer
3    go to his house that he's so dangerous.  Well, there's
4    no indication that my client made any overt threats to
5    anyone.  We're going off of social media accounts.
6    There's no accusations that my client used any of
7    these rifles or firearms and threatened anyone with
8    them.  There's none of those accusations.  In my
9    opinion, this is speculation on the part of the
10   Government at this proffer to keep my client detained.
11           Now, as I indicated prior, my client self
12   surrendered here.  He's going to make all of his Court
13   appearances.  He has a home in Bergen.  He has a job
14   with Amazon.  He's going to show up for all of his
15   Court appearances, so the likelihood of him doing that
16   is very high.  There's been no warrants.  There's been
17   no type of contact with law enforcement prior to this.
18           So in my opinion there are compelling
19   reasons and we can set some conditions of release.  If
20   it's monetary bail that the Court would like or some
21   type of monitored home confinement, electronic
22   monitoring, there are reasonable accommodations that
23   we can come up with with pre-trial to ensure that my
24   client makes all of the Court appearances.
25           So for those reasons, Your Honor, and based

```
 1    upon my client's history, I would ask that he would
 2    not be detained and also based upon what I
 3    characterize very weak proof here that my client
 4    possessed all of these firearms that the Government is
 5    claiming that he possessed.  Thank you.
 6              THE COURT:  Okay.
 7              MR. INTRAVATOLA:  Your Honor, if I could
 8    briefly just respond.
 9              THE COURT:  Yes.
10              MR. INTRAVATOLA:  Clarify some things.
11    First, I would just note that nothing what I just
12    heard about defendant's background negates our
13    concerns from a danger standpoint.  In fact, defense
14    counsel noted that defendant is highly tech savvy.  He
15    has a good facility with the internet and computers.
16    This ability compounds our concerns because I've
17    already gone through the posts that he's made online
18    and the reach that those could have on a social media
19    site like Twitter or X.
20              Additionally, and I forgot to mention this
21    earlier, defendant -- as part of this investigation
22    we've learned that defendant in fact uses the internet
23    to distribute and potentially sell what are his own
24    schematics for 3D printed firearms, and so this
25    facility with electronics and the potential that an
```

1  individual who is savvy with electronics to hide or
2  cover his tracks or his behavior is especially
3  concerning.
4           And Judge, with respect to the sufficiency
5  of the evidence, I would note that law enforcement
6  lawfully obtained a GPS tracker monitor on the
7  individual's vehicle which is how they found the
8  additional guns in the first place.  They followed him
9  and his path was unusual which is what led them to --
10 one of the several places that he hid firearms.
11          So that was just a brief response, Judge,
12 but the theory that the individual at one of those
13 places cooperated and then somehow, you know, led to
14 his son, another individual who is also in possession
15 of firearms from the defendant, it doesn't quite make
16 sense that they would all be willfully cooperating
17 with the Government when there was no -- there's no
18 reason to go out of their way to reach out to the
19 Government about these additional firearms.  And so
20 for that reason, Judge, I don't believe that the
21 sufficiency argument is persuasive either.
22          THE COURT:  Okay.  I'm going to hold this
23 hearing open.  I want a more detailed written report.
24 I appreciate your oral summary that you gave me.  We
25 can schedule whenever you want next week as soon as

1   you want, Mr. Wolford.  There is no criminal history
2   right now.  That's a factor.  I'm only going to
3   address conditions between now and the continuation of
4   the hearing.  Okay?  So I'm going to release him but
5   on a $50,000 signature bond to be signed by him.  No
6   other family members are here today.  Right?
7             MR. INTRAVATOLA:  Correct.
8             THE COURT:  Okay.  Coupled with the
9   admonition that he not violate state, federal or local
10  law.  I'm not going to send pre-trial out to his house
11  right now because I do have concerns in that regard
12  but we'll revisit those issues next week.  When do you
13  want to have a hearing?
14            MR. INTRAVATOLA:  Judge, if we could have
15  it -- Monday is bad for the Government.  If possible
16  Tuesday or later.  I'm generally flexible otherwise.
17            THE COURT:  Okay.
18            MR. WOLFORD:  Tuesday would be fine, Your
19  Honor.
20            THE COURT:  All right.  Let me --
21            MR. WOLFORD:  I have something at 10:00 in
22  front of Judge Pedersen.
23            THE COURT:  Okay.  How about maybe 2 in the
24  afternoon?
25            MR. WOLFORD:  That would be fine.

19

1              THE COURT:  Does that work for you?
2              MR. INTRAVATOLA:  Just one moment -- that
3       would work for the Government, Judge.
4              THE COURT:  Andre, does that work for you?
5              OFFICER MCCRAE:  That's fine.
6              MR. INTRAVATOLA:  Judge, however, I would
7       move for a stay pending appeal of the Court's decision
8       today.  We plan to appeal the Court's decision to
9       release defendant.
10             THE COURT:  Well, I'll give you until 5:00,
11      but --
12             MR. INTRAVATOLA:  Understood, Judge.
13             THE COURT:  Otherwise -- otherwise, he'll be
14      released for the weekend.
15             MR. INTRAVATOLA:  Okay.  Understood, Judge.
16             THE COURT:  Okay.  So he'll sign the bond
17      today and the -- and the preliminary conditions of
18      release.  You understand, sir, that you will be
19      signing this bond.  If you violate any of the
20      conditions of your release, you'll be liable -- in
21      addition to criminal consequences, you'll be liable
22      for the sum, the amount of the bond.  Do you
23      understand that, sir?
24             THE DEFENDANT:  I do.
25             THE COURT:  All right.  Okay.  That will be

```
 1   my ruling and I'll give you until 5:00 to obtain a
 2   stay, not seek a stay.  Otherwise, he'll be released.
 3              MR. INTRAVATOLA:  Understood, Judge.
 4              THE COURT:  Okay.  Thank you.
 5              MR. WOLFORD:  Thank you, Your Honor.
 6              (Proceeding concluded at 1:25 p.m.)
```

7  **CERTIFICATE OF COURT REPORTER**

8

9              I certify that this is a true and accurate
10  record of proceedings in the United States District
11  Court for the Western District of New York before the
12  Honorable Jeremiah J. McCarthy on October 18, 2024.
13
14  S/ Brandi A. Wilkins
15  Brandi A. Wilkins
16  Official Court Reporter